*283 JUSTICE ERDMANN
dissenting.
I respectfully dissent.
Initially, it is important to note that in its discussion of the certified question, the majority has omitted Agreed Fact No. 3 contained in the Order Certifying Question, which’provides:
That on or about May 31,1991, Plaintiff issued to Wade and Diana Brown, the named insured and parents of Scott Hankel, a policy of auto insurance, a true, correct, and complete copy of which is marked “Exhibit A” attached hereto and incorporated herein by reference.
Thus, although the certified question from the Federal District Court is somewhat narrow, it is also clear that both the parties and the Federal District Court contemplated that this Court address the certified question with reference to and in the context of the provisions of the specific insurance policy in this case. While resolution of the certified question requires an analysis of the language of § 33-23-203, MCA, such an analysis should not be in a vacuum separate and apart from the policy involved in the case.
After narrowing an already narrow certified question, the majority embarks on a strained statutory construction analysis to reach its ultimate result. The majority correctly sets forth the rules upon which this Court relies when construing a statute. If the statutory language is clear and unambiguous, then no further interpretation is required. Clarke v. Massey (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088. Where the intention of the Legislature can be determined from the plain meaning of the words used in a statute, the courts may not go further and apply any other means of interpretation. Clarke, 897 P.2d at 1088 (citing Tongue River Elec. Coop. v. Montana Power Co. (1981), 195 Mont. 511, 515, 636 P.2d 862, 864). Under this framework, I would hold that the clear language of § 33-23-203, MCA, prohibits the stacking of underinsured motorist and medical payment coverages.
Section 33-23-203(1), MCA, provides that:
Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under any such policy, including the limits of liability under uninsured motorist coverage, must be determined as follows, regardless of the number of motor vehicles insured under the policy:
(a) the limit of insurance coverage available for any one accident is the limit specified for the motor vehicle involved in the accident;
*284 (c) the limits of coverage specified for each motor vehicle insured under the policy may not be added together to determine the limit of insurance coverage available under the policy for any one accident.
The majority opinion focuses on the term “motor vehicle liability policy” (MVLP) as it is used in § 33-23-203(1), MCA. As noted by the majority, MVLP is defined in § 33-23-204(2), MCA, as any policy required under Title 61, Chapter 6, Parts 1 and 3. The majority opinion ignores the reference to Part 3 and improperly imposes the restricted definition of MVLP in Part 1 to § 33-23-203, MCA.
It is important to understand the different purposes of Parts 1 and 3 of Title 61, Chapter 6, MCA, which are referenced in § 33-23-204(2), MCA. Part 1 is the Motor Vehicle Safety-Responsibility Act (MVSRA) which was enacted to require that drivers who have had an accident involving a motor vehicle, or drivers who have an outstanding unsatisfied judgment against them as the result of a motor vehicle accident, provide proof of financial responsibility. Proof of financial responsibility requires proof of an MVLP as defined in § 61-6-103, MCA. See Boldt v. State Farm Mutual Auto Ins. Co. (1968), 151 Mont. 337, 443 P.2d 33.
Section 61-6-103, MCA, defines MVLP for purposes of the MVSRA and provides, in pertinent part, as follows:
(1) A “motor vehicle liability policy”, as the term is used in this part, means an owner’s or operator’s policy of liability insurance, certified as provided in 61-6-133 or 61-6-134 as proof of financial responsibility and issued, except as otherwise provided in 61-6-134, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.
(2) The owner’s policy of liability insurance must:
(b) insure the person named therein and any other person, as insured, using any motor vehicle or motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each motor vehicle, as follows:
*285 (i) $25,000 because of bodily injury to or death of one person in any one accident and subject to said limit for one person;
(ii) $50,000 because of bodily injury to or death of two or more persons in any one accident; and
(iii) $10,000 because of injury to or destruction of property of others in any one accident.
(8) Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy, and the excess or additional coverage is not subject to the provisions of this part. With respect to a policy which grants the excess or additional coverage, the term “motor vehicle liability policy” applies only to that part of the coverage which is required by this section.
(Emphasis added.)
The majority relies on subsection (8) to conclude that since under-insured motorist and medical payment coverages are not included in subsection (2)(b), they are not part of an MVLP under § 33-23-203(1), MCA. If the majority was only construing .§ 61-6-103, MCA, they would be correct in their interpretation. However, in the present case the Federal District Court has requested our interpretation of § 33-23-203, MCA. When several statutes apply to a given situation, this Court’s job is to adopt a construction that will give effect to all. Section 1-2-101, MCA; See also Schuman v. Bestrom (1985), 214 Mont. 410, 693 P.2d 536.
The definition of MVLP in § 61-6-103(1), MCA, applied by the majority to § 33-23-203, MCA, is restricted by its own terms to Part 1 of Chapter 6 and to only those policies certified under §§ 61-6-133 or -134, MCA, for individuals who are required to provide proof of financial responsibility.[1] See § 61-6-131, MCA. The language of § 61-6-103(8), MCA, reasonably construed, means that the strict require *286 ments of the MVSRA apply to the liability coverage required by subsection (2)(b), but not to the additional or excess coverages available in a policy certified for a “bad driver.”[2]
This construction is further supported by reviewing Part 3 of Chapter 6 which contains the mandatory liability limits for all Montana drivers. As noted, § 33-23-204(2), MCA, defines MVLP as any policy required under Title 61, Chapter 6, Parts 1 and 3: Policies can be issued under either Part 1 or Part 3 and the two parts are independent. See Transamerica Ins. Co. v. Royle (1983), 202 Mont. 173, 656 P.2d 820.
Part 3 of Chapter 6 references and incorporates only the liability limits contained in § 61-6-103, MCA, and the remaining provisions of the MVSRA are not incorporated into Part 3. If, therefore, a policy is issued under Part 3, it is not subject to the provisions of Part 1. See Boldt, 443 P.2d at 35-36; Transamerica, 656 P.2d at 822-23. The facts included with the certified question do not reflect that the policy was issued under Part 1, and it is apparent from the policy itself that it was issued under Part 3.1 therefore believe the majority’s conclusion that the definition of MVLP in the MVSRA applies in its entirety to § 33-23-203, MCA, is in error and ignores the reference to Part 3 in § 33-23-204(2), MCA.
In my view § 61-6-136(1), MCA, conclusively establishes that the Legislature intended the definition of MVLP in the MVSRA apply only to policies issued under the MVSRA:
Other policies not affected. (1) This part [part 1] shall not be held to apply to or affect policies of automobile insurance against liability which may now or hereafter be required by any other law or this state ....
Here the policy was issued under Part 3 and the restrictive definition of MVLP in Part 1 clearly was not intended to apply to policies issued under the part requiring mandatory liability limits for all drivers.
Even if an MVLP under § 33-23-203, MCA, was as limited as the majority holds, the clear language of § 33-23-203, MCA, still leads to the conclusion that the statute prohibits stacking of underinsured motorist and medical pay coverages. Section 33-23-203(1), MCA, provides that stacking is prohibited for insurance coverage “available *287 under any such [MVLP] policy.” (Emphasis added.) The Legislature did not prohibit stacking for insurance coverage “required” by the policy, which according to the majority is only the liability limits found in § 61-6-103(2)(b), MCA, but rather, prohibited stacking for coverages “available” under the policy.
Under the plain language of § 33-23-203, MCA, stacking of both medical payment and underinsured motorist coverages is prohibited since both were “available” under the policy. Where the language of a statute is plain, unambiguous, and certain, the function of the court is simply to ascertain and declare what is in terms or substance contained therein, and not to insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA. See also Reese v. Reese (1981), 196 Mont. 101, 637 P.2d 1183.
Further, the majority’s conclusion that an MVLP policy, as it is used in § 33-23-203, MCA, is limited to the $25,000/$50,000/ $10,000 requirements of § 61-6-103(2)(b), MCA, is simply not consistent with the other language of § 33-23-203, MCA. Section 33-23-203(1), MCA, provides that stacking is prohibited for insurance coverage “available under any such [MVLP] policy including limits of liability under uninsured motorist coverage.” (Emphasis added.) Under the majority’s interpretation, an MVLP includes only the financial limitations found in § 61-6-103(2)(b), MCA. Clearly, uninsured motorist coverage is not required by that provision, but is specifically recognized by the Legislature as being available under an MVLP.
In an effort to avoid this clear statutory language, the majority concludes that uninsured coverage is required coverage. Uninsured coverage, to the degree it is required, is not required by Part 1 of Chapter 6, Title 61, MCA, but rather by § 33-23-201, MCA.[3] The language in § 61-6-103(8), MCA, relied upon by the majority, clearly states that when a policy grants coverage in excess of the coverage required by an MVLP, the term MVLP “applies only to that part of the coverage which is required by this section.” (Emphasis added.) Since uninsured coverage is not required by § 61-6-103, MCA, the majority’s logic breaks down.
*288 Finally, the phrase “including the limits of liability under uninsured motorist coverage” in § 33-23-203, MCA, also demonstrates that the Legislature intended that the stacking prohibition apply to coverages other than those required by § 61-6-103(2)(b), MCA, and uninsured motorist coverage. The term “including” is not a limiting term, but instead is used as an illustrative device. A number of courts have held that the term “including” used in similar contexts is not all-inclusive. See Phelps Dodge Corp. v. National Labor Relations Bd. (1941), 313 U.S. 177, 61 S. Ct. 845, 85 L. Ed. 1271; Federal Land Bank of St. Paul v. Bismarck Lumber Co. (1941), 314 U.S. 95, 62 S. Ct. 1, 86 L. Ed. 65; Schwab v. Ariyoshi (Haw. 1977), 564 P.2d 135; Connerty v. Metropolitan Dist. Comm’n (Mass. 1986), 495 N.E.2d 840; Cumberland Reclamation v. Secretary Dep’t of Interior (6th Cir. 1991), 925 F.2d 164. See also 2A C. Sands, Sutherland Statutory Construction § 47.23 at 194 (4th ed. 1984).
This Court’s prior decisions in this area are admittedly confusing and the majority adds to that confusion by distinguishing several cases that clearly apply to this situation. The majority attempts to distinguish this case from Grier v. Nationwide Mutual Insurance Co. (1991), 248 Mont. 457, 812 P.2d 347, on the basis that in Grier we .interpreted the policy, while here we are restricted to interpreting the statute. As noted earlier, I believe the majority has improperly narrowed the issue presented by the Federal District Court to exclude any consideration of the policy language. By referencing the policy provisions in the certified question and by attaching a copy of the policy to the certified question, both the Federal District Court and the parties intended that we consider the provisions of the policy in responding to the question.
In Grier, the underinsured motorist coverage was part of the policy section on uninsured motorist coverage and there was no separate policy section for underinsured coverage. We also noted that the declarations page made no mention of underinsured coverage. We concluded that under those circumstances, the underinsured coverage was part of the uninsured coverage. In this case, however, the underinsured coverage is also part of the uninsured coverage provision and there is no separate section in the policy for underinsured coverage. While the declaration page does reference underinsured coverage, it specifies that there is no separate premium for underinsured coverage as it is included in the uninsured coverage premium, which was the rationale relied upon in Grier.
*289 Therefore, under the rationale of Grier, the underinsured coverage in the policy in question is clearly part of the uninsured coverage and stacking is specifically prohibited by § 33-23-203, MCA.
The majority also distinguishes this Court’s recent decision in Chilberg v. Rose (1995), 273 Mont. 414, 903 P.2d 1377, on the grounds that Chilberg was a multiple policy case and did not interpret § 33-23-203, MCA. In Chilberg there were multiple policies since the same insurance company issued separate policies for each vehicle rather than insuring all the vehicles in one policy, as was done in this case. The decision in Chilberg was not dependent on the fact that multiple policies were involved, but rather on the fact that Chilberg, like Leonard in this case, was a stranger to the insurance policies, not being the named insured or a family member. Having never paid any premiums on the policies, nor having any knowledge the policies even existed prior to the accident, this Court ruled that Chilberg should not be able to stack the separate underinsured coverage limits. Chilberg, 903 P.2d at 1380. Like Chilberg, Leonard had no “reasonable expectation” of coverage and, under the rationale of Chilberg, his estate should not be allowed to stack underinsured coverage.
In summary, the majority’s strained and restrictive construction of MVLP as used in § 33-23-203, MCA, is contrary to the clear language of the statute and does not take into account the context in which the statute was written. Under the majority opinion, the only stacking prohibited under § 33-23-203, MCA, is for the liability limits for policies issued under the MVSRAfor “bad drivers” and uninsured motorist coverage. Since stacking has never been applied to liability coverages,[4] the only type of coverage in Montana for which stacking is prohibited is now uninsured motorist coverage. The plain language of the statute is simply not that narrow.
The practical result of the majority’s decision is absurd. Since the majority opinion recognizes the prohibition against the stacking of uninsured coverage limits, if Leonard had been struck and killed by a driver with no liability insurance at all, stacking would not be allowed and the maximum his estate could have recovered under the policy would be $50,000. Under the majority’s interpretation, how *290 ever, since the driver who struck Leonard had the minimum limits, the vehicles under the policy can be stacked and Leonard’s estate is entitled to $350,000. Statutes should be read and construed so as to avoid absurd results if a reasonable construction can avoid it. See Christenot v. State (1995), 272 Mont. 396, 901 P.2d 545; Darby Spar, Ltd. v. Department of Revenue (1985), 217 Mont. 376, 705 P.2d 111.
I would therefore answer the certified question presented to this Court in the affirmative and hold that § 33-23-203, MCA, prohibits the stacking of medical payment coverage and underinsured motorist coverage.

. The majority relies on § 1-2-107, MCA, as authority to apply the definition of MVLP in the MVSRAin Title 61 to the anti-stacking statute in Title 33. Section 1-2-107, MCA, provides, however, that the definition of a phrase in one part of the code may be applied to the same phrase in another part “except where a contrary intention plainly appears.” Here, the plain language of § 61-6-103(1), MCA, restricts the definition of MVLP “as the term is used in this part” and then only for policies certified under §§ 61-6-133, -134, MCA. It would be difficult to envision a clearer expression of legislative intent. The Legislature intended that the definition of MVLP in § 61-6-103(1), MCA, be restricted to the MVSRA.

. Policies issued under the MVSRA (Part 1) contain a number of restrictions not found in policies issued under the mandatory liability provision (Part 3). For instance, under the MVSRA the liability of the insurer is absolute after an accident occurs and there are restrictions as to cancellation and increasing premiums. See § 61-6-103(6)-(7), MCA.

. In Kemp v. Allstate Ins. Co. (1979), 183 Mont. 526, 535, 601 P.2d 20,25, this Court, in a stacking case predating § 33-23-203, MCA, held that: “Montana’s uninsured motorist statute is not mandatory, in the sense that the insured has the right to reject in writing such coverage in policies issued in Montana.” The majority’s holding in this case that uninsured motorist coverage is required coverage is in direct conflict with our holding in Kemp.

. See Allstate Insurance Company v. Skorupa (1993), 13 Mont.Fed.Rep. 355, which addressed the issue of stacking liability policies and concluded that this Court has clearly recognized a distinction between liability coverage and uninsured motorist coverage citing Jacobson v. Implement Dealers Mut. Ins. Co. (1982), 196 Mont. 542, 640 P.2d 908, and Chaffee v. United States Fid. & Guar. Co. (1979), 181 Mont. 1, 591 P.2d 1102.